JANE REAGAN'S ADMINISTRATOR v. M. P. HOLLIMAN.

1. In a suit by the legal representative of a deceased married woman, to recover land which had been donated to her as her separate property, the defendant pleaded that he had purchased the land from one L.; that previous to his purchase the married woman claimed this and also another tract, both situated on an eleven league grant claimed by L., that the married woman and her husband were desirous of settling on one of the tracts, and the husband, as the authorized agent of his wife, entered into a contract with L., by which the husband agreed to relinquish his wife's claim to the tract now in suit, and to pay L. one hundred dollars if L. would convey the other tract to him or his wife; and that L., pursuant to this contract, conveyed the other tract to the husband, and the married woman went into possession of it under such conveyance, and continued in possession of it until her death. *Held*, that this answer was demurrable, because it does not show that L.'s title was superior to that of the married woman; nor does it aver that she consented to her husband's contract with L. at time it was made, or that she ever ratified it, or that any consideration passed to her, or that

the contract was legally or equitably binding on her; nor does it allege that she ever made any legal conveyance to L. of the land in controversy.

2. By way of estoppel the defendant further pleaded that before he bought the land from L. he called on the married woman, in whose right this action was brought, and she disclaimed any title to or interest in the land, and said she had no control of it, but that it belonged to L.; and in consequence of these statements defendant bought the land from L., which he would not otherwise have done. *Held* to be insufficient as a plea of estoppel, because there is no averment that the married woman, in making the statements, acted with a knowledge of her rights, or made the statements to deceive the defendant, or that he was actually deceived by them.

3. Dealings of a husband with the separate property of his wife are always to be closely scrutinized, and they will not be upheld when even slight evidence of fraud or undue influence appears; nor can they be supported when they fail in the absolute requirements of the law.

4. It was error to admit in evidence, over objection duly interposed, a power of attorney from a married woman to her husband, made in 1853, and empowering him to convey her separate real estate, when the certificate to her acknowledgement did not show the privy examination required by the statute, and there was no evidence *dehors* the certificate that she executed the power voluntarily, etc. So, also, it was error to admit a written contract of the husband, made in virtue of such defective power of attorney, and importing a relinquishment of her title to land pertaining to her separate estate.

APPEAL from Leon. Tried below before the Hon. John Gregg.

The trial and judgment in the court below were had and rendered at the Spring term, 1860.

The facts of the case, in so far as material, are stated in the opinion with great perspicuity.

Verdict and judgment below for the defendant, and plaintiff appealed.

*Wm. D. Wood*, for the appellant, filed an able and elaborate argument, discussing the entire case, but space can be afforded to but a small portion of it as follows: The second exception to the

plea goes to the point that Lamar, the vendor of defendant, had only "a claim" to the land sued for, and not that he had the better and superior title to Mrs. Reagan. It must be recollected that the title of Lamar is here set up by way of giving color and equity to the compromise or agreement as to the conflict, which is the gist of the plea. No court will enfore an inequitable contract or compromise, and more especially when the rights and property of married women are to be affected, they being, on account of their disability, the peculiar favorites of courts of equity. It was necessary for the plea to make a showing of such facts as would bring it within the conscience and equity of the court to enforce the compromise against Mrs. Reagan. Such facts ought to have been alleged in the plea as to show the court that Mrs. Reagan or her separate property would have been advantaged by the compromise. Something more than a mere "claim," not alleged or shown by any fact to have been the better and superior title to that held by Mrs. Reagan, ought to have been shown in the plea; or at least facts alleged showing that the right was doubtful between the parties, otherwise there was no basis for the estoppel or ground to support the compromise. The plea does not show any consideration for the compromise.

Third—Exception to this plea goes to the point that the compromise alleged does not in law or equity bind Mrs. Reagan or her representatives. The plea sets up a compromise made by Joseph B. Reagan, the husband of Mrs. Reagan and her alleged agent and attorney in fact. It is contended that the mode of compromise or conveyance, set up in the plea, is not such a is required by the statute to enable married women to divest themselves of title to their separate property, and therefore the compromise or conveyance set up is not in law or equity binding upon the plaintiff in this suit. (See Callahan v. Patterson, 4 Texas.) In this case, the conveyance was made by deed signed by both the husband and the wife, and it was shown that a part of the purchase

money went to pay the debts of the wife contracted before marriage, and for the use and benefit of the family, and yet the court refused to enforce the conveyance, because it was not acknowledged by the wife in the mode pointed out by the statute, and in the face of the fact that the wife was mainly instrumental in effecting the sale.   In Womack v. Womack, 8 Texas, 397, it is laid down by the court that the statute does not expressly declare void any other mode of conveyance made by the wife than that pointed out by the statute; that the free, full and voluntary consent of the wife may be shown by other modes than the certificate of acknowledgment of an officer, and she will be bound, provided it is equitable to enforce it against her, that is, provided the conveyance was for the actual benefit of the wife or her separate property.   This case goes further.   It was alleged and proved that the conveyance was for the benefit of the wife's separate property; that she consented to it at the time and continued to acquiesce in it up to the time of her death.   And I understand the court to say in this case that it is necessary to prove all of this. If necessary to prove it the plea should contain it.   There is no allegation in the plea that Mrs. Reagan consented to the compromise at the time it was made or subsequent, and that she continued to acquiesce in it.   There is no allegation to show that the agreement was for the benefit of the separate property of Mrs. Reagan. It cannot be sustained by the case of Womack v. Womack, nor does the case of Gregory v. Vanvleck, 21 Texas, 40, sustain it But can the wife convey by agent or attorney?   See 2 Kent, 139, which lays down the general rule as to how she can convey her separate property.   In a note on this page it is stated to have been decided in Vermont, that she cannot convey by power of attorney to her husband.   I apprehend that it will not be contended that she could verbally make an agent, and that a subsequent verbal assent by her to the conveyance made by such agent, would bind her, unless such assent was given and coupled with a disclaimer,

which latter should induce a purchase by an innocent third party. Nor will she be any more bound by the conveyance or agreement of an agent constituted by a written power. A power of attorney simply to sell vests in the agent no interest, and conveys no right till executed. It is revokable at any moment. So far as a married woman is concerned it could serve no other purpose, if properly authenticated, than evidence of a willingness to the sale at the time of the execution of the power; not that she was willing to the sale at the time the conveyance was in fact made by the agent, which might be weeks and months subsequent to the execution of the power. So in every case of sale by agency of the separate property of married women, whether by written power or not, it must be necessary to allege that at the time of the sale or transfer the wife assented to it freely and fully; and, as intimated in Womack v. Womack, that she continued to acquiesce in the same up to the time of her death, or of the date of suit. If, then, the wife could convey by agent, the necessary allegations of assent to the sale and continued acquiescence are not contained in the plea. The statute on the subject of conveyances by married women evidently contemplates that it shall be by deed executed jointly with the husband. It does seem to me that, although the mode of proving the assent of the wife, pointed out by the statute, may be dispensed with, that the fact that the deed must be signed by the wife cannot, unless there is a total abandonment by the husband, which is not alleged in this plea. Any showing of a conveyance made by the wife, different from the mode pointed out by the statute, is in derogation of the statute, and every fact necessary must be alleged. Nothing can be presumed in favor of a plea setting up such conveyance, or in favor of such conveyance. Even if the wife had signed the deed, an allegation of prior consent would be no consent at the date of the deed. The free, full and voluntary consent of the wife to the conveyance at the time must in every case positively appear.

In the case of Taylor v. Hall, 20 Texas, 211, the facts were that the husband and wife had jointly executed a note payable in cattle; that the cattle of the wife were delivered by her consent in satisfaction of the note. The court said in this case that the consent of the wife to the delivery of the cattle in payment of the note, could in no way affect her right to sue for and recover them. This conclusion can only be arrived at upon the ground that she did not consent to the sale in the mode pointed out by the statute; by deed or bill of sale, executed jointly by her and her husband, and acknowledged by her before a proper officer. If consent in this case, outside of the form of the statute, was insufficient to divest the right of the wife to cattle, how much the less will such facts, as are alleged in the plea under consideration, be sufficient to divest her of title to real property?

I refer the court to 5 Texas, Cartwright v. Hollis and wife, and Hollis and wife v. Francois. In these cases the principle is announced that she, the wife, cannot charge her separate property for the debt or default of the husband, only in the mode pointed out in the statute. If she cannot charge her property, which is *pro tanto* a conveyance, how can she convey it? These cases go further, and lay down the principle that the wife cannot convey the most insignificant article of her separate property, only by the mode pointed out by the statute.

No brief for the appellee has reached the Reporter.

WALKER, J.—This suit was brought in the district court by appellant, by petition filed May 27, 1858. It is an action of trespass to try title to 640 acres of land in Leon county, which land is particularly described in a copy of the field notes attached to and made a part of the petition.

The petition sets up that the land was located by virtue of a bounty certificate issued by the Secretary of War of the Republic of Texas, on the fourth day of March, 1839, No. 8056, to Abram

R. *Reagan.* (This is probably a clerical mistake, as is shown by other portions of the record. It should be TAYLOR.)

The land was surveyed October 1, 1839, and the survey and certificate appear to have been duly returned to the land office.

The petition further states that on the thirtieth of December, 1852, said Taylor conveyed the land to his sister, *Jane Reagan,* by deed of gift; that Jane Reagan, at the time of her death, was the legal owner.

That about the first of December, 1856, the defendant, Holliman, in the lifetime of said Jane Reagan, and without her consent, took possession of the land, and continued to use and occupy it, claiming it as his own, cutting down and destroying and carrying off timber, etc.; and prays for damages and possession.

On the eighteenth day of November, 1858, defendant filed answers, to-wit: 1. General denial and not guilty. 2. That defendant, on the ———— day of ————, 18—, purchased the land from Mirabeau B. Lamar; that previous to his purchase, *Jane Reagan* claimed to be the owner of the land in question in this suit, and also of another tract of 640 acres, both of which were located upon an eleven league grant claimed by Lamar, and known on the map of Leon county as the Fernando del Valle eleven league grant; that the said Jane and her husband, being desirous of settling on one of the tracts, the husband, Joseph B. Reagan, as the authorized agent of said Jane, entered into a contract with Lamar by which he, Reagan, agreed to lift the certificate upon the land in question in this suit, located by bounty warrant for military services, and pay Lamar one hundred dollars, if the said Lamar would convey to said Jane or Joseph B. Reagan the other tract of 640 acres, located by virtue of the bounty warrant, for being in the battle of San Jacinto; that, in pursuance of the contract, Lamar made to *Joseph B. Reagan* a title to the land located under the San Jacinto warrant; that plaintiff's intestate went into possession under her title, and

continued in possession to her death; that before defendant purchased he called upon Mrs. Reagan, and she disclaimed having any right, title or interest in the land, and said she had no control of the same, and that it belonged to Lamar; that in consequence of this statement he purchased of Lamar, which he would not have done but for her statements.

Defendant sets up occupancy in good faith, and valuable improvements to the amount of $1700, for which he asks judgment in reconvention. To this answer the plaintiff files exceptions,

1. That the plea does not describe the eleven league grant by metes and bounds.

2. The answer does not show legal or *bona fide* title in Lamar, or how, or through whom he derived title, or that it was an older, better or superior title to that of Mrs. Reagan.

3. That the answer does not allege that Mrs. Reagan consented to the contract of her husband with Lamar at the time, or that she afterwards ratified it, or that she received any consideration; and does not show that the contract was legally or equitably binding upon her.

4. That it is not alleged that Mrs. Reagan made any legal conveyance, or relinquishment to Lamar of the land.

Three other exceptions are taken, substantially the same as the above.

On May 20, 1859, defendant filed an amended plea, in which he sets up the statutes of limitation of three, five and ten years, by himself and those holding under him.

On May 15, 1860, plaintiff, by way of replication to the plea of settlement, and to the alleged disclaimer of Mrs. Reagan to defendant, alleges the bodily and ill-health and imbecility of mind of Mrs. Reagan at the time of the contract between her husband and Lamar, and also at the time of the alleged disclaimer, and her incapacity, in consequence thereof, of asserting or protecting her rights.

On May 19, 1860, defendants filed a second amended answer, alleging that the land sued for is a part of an eleven league grant, made on the eighth day of May, 1831, by the Mexican government, by her legally authorized commissioner, Francisco Madero, to Fernando del Valle; and pleads the same in bar to plaintiff's suit.

Upon this state of the pleadings the parties, at the Spring term of the court, 1860, proceeded to trial.

The several exceptions of plaintiff to the special pleas of the defendant were overruled by the court, and the plaintiff excepted.

The plaintiff then read in evidence the land office copy of the certificate and field notes mentioned in his petition, and introduced witnesses to prove the possession and occupancy of Holliman, since the spring of 1857 ; and here rested.

The defendant then offered in evidence the affidavit of Wm. B. Stokes, one of his attorneys, to lay the foundation for parol proof of the execution of a protocol and testimonio to del Valle, of the eleven league grant, from the commissioner of the Mexican government.

Also the depositions of Sylvester Portillo and Antonio Superville, to establish, by parol, the execution of these instruments and their contents.

Next a paper purporting to be a power of attorney from Jane Reagan (*alias* Jane Taylor) to her husband, Joseph B. Reagan, and a purported agreement executed by Joseph B. Reagan, to Mirabeau B. Lamar.

Each of which was objected to by the plaintiff, the objections overruled by the court, and the plaintiff excepted.

There are eight assignments of error in this case, and we think most, if not all of them, are well taken.

The court erred in overruling the exceptions to the first and second special pleas.

The affidavit of Wm. B. Stokes did not lay a legal foundation

for the introduction of secondary evidence of the eleven league grant to Fernando del Valle, or the contents of the protocol or testimonio of the grant.

Hence the evidence of the witnesses Portillo and Superville was incompetent, and ought not to have gone to the jury.

The power of attorney of Jane Reagan (*alias* Jane Taylor) was not a power legally executed to enable the husband, whom it is attempted to make her attorney, to convey her separate estate. There was no privy examination, nor is there any certificate of the officer before whom the acknowledgement purports to have been taken, that she ever expressed herself satisfied with the power, or with her husband's acts under it.

The alleged compromise with Lamar was not for the benefit of her separate estate, nor to pay her debts, nor to afford her a support, or her children.

The husband endeavored to surrender her title to one tract of 640 acres, to get in the supposed outstanding title of Lamar to another tract of the same number of acres, and was to pay Lamar $100 in money besides. Lamar attempted to make title to Reagan, but, so far as is shown in this case, had none to make.

Such transactions between husband and wife are always to be closely scrutinized, and they will not be upheld when there is even slight evidence of fraud or undue influence; nor can they be supported where they fail in the absolute requirements of the law.

There are no intervening equities here to stand in the way of a proper administration of justice. Holliman has no title in himself, either on paper or under the three, five or ten years limitation. And the outstanding title set up in Lamar, even if good, would not be held good against Mrs. Reagan, for she received no consideration for the compromise made by her husband with Lamar, and this is still a controversy between the representatives of Mrs. Jane Reagan and those of Mirabeau B. Lamar, and the latter cannot take something for nothing from a court of equity jurisdiction.

The paper evidencing the contract between Joseph B. Reagan and Lamar should not have been admitted in evidence. It proved nothing to bind Mrs. Reagan; nor is she in any way estopped by it from setting up title to the land in controversy; nor is she estopped by her declarations to Holliman, if made in ignorance of her rights and not intended to deceive him.

There was error in the court refusing the charges asked by the plaintiff below.

A new trial should have been granted. For these reasons the judgment of the district court is reversed and the cause remanded, to be proceeded in in accordance with this opinion.

Reversed and remanded.